NO. 07-08-0195-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

DECEMBER 31, 2008

______________________________


TERESA GERHARDT, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE


_________________________________

FROM THE 242ND DISTRICT COURT OF HALE COUNTY;

NO. B14375-0203; HON. ED SELF, PRESIDING

_______________________________

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.
MEMORANDUM OPINION
          Appellant, Teresa Gerhardt, pled guilty to the state jail felony offense of theft. As
a result of the plea bargain, the trial court deferred finding appellant guilty and placed her
on community supervision for a period of five years. Subsequently, appellant was
adjudged guilty and sentenced to two years in a state jail facility, however, the sentence
of confinement was suspended and appellant was placed on community supervision for
a period of five years. Thereafter, the State filed an application to revoke appellant’s
community supervision. At a hearing on the State’s motion to revoke community
supervision, appellant entered a plea of true to the allegations filed against her. The trial
court admonished appellant, but she persisted in pleading true. After hearing the
evidence, the trial court found the allegations of the State’s motion to revoke community
supervision to be true. The trial court sentenced appellant to serve two years in a State
Jail Facility. Appellant has appealed the trial court’s decision. We affirm.
          Appellant’s attorney has filed an Anders brief and a motion to withdraw. Anders v.
California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed. 2d 498 (1967). In support of his motion
to withdraw, counsel certifies that he has diligently reviewed the record, and in his opinion,
the record reflects no reversible error upon which an appeal can be predicated. Id. at 744-45. In compliance with High v. State, 573 S.W.2d 807, 813 (Tex.Crim.App. 1978), counsel
has candidly discussed why, under the controlling authorities, there is no error in the trial
court’s judgment. Additionally, counsel has certified that he has provided appellant a copy
of the Anders brief and motion to withdraw and appropriately advised appellant of her right
to file a pro se response in this matter. Stafford v. State, 813 S.W.2d 503, 510
(Tex.Crim.App. 1991). The court has also advised appellant of her right to file a pro se
response. Appellant has filed a response which we have carefully reviewed. After
reviewing the response filed by appellant, we note that it does not raise any additional
grounds to support an appeal.
          By his Anders brief, counsel raises grounds that could possibly support an appeal,
but concludes the appeal is frivolous. We have reviewed these grounds and made an
independent review of the entire record to determine whether there are any arguable
grounds which might support an appeal. See Penson v. Ohio, 488 U.S. 75, 109 S.Ct. 346,
102 L.Ed.2d 300 (1988); Bledsoe v. State, 178 S.W.3d 824 (Tex.Crim.App. 2005). We
have found no such arguable grounds and agree with counsel that the appeal is frivolous.
          Accordingly, counsel’s motion to withdraw is hereby granted and the trial court’s
judgment is affirmed.



 
Mackey K. Hancock

Justice





Do not publish. 



P>

 Through his remaining three issues, appellant asserts that the officer had no
legitimate basis to detain and search the van after being stopped for speeding. We
overrule these points as well.

 It is clear that an officer who witnesses a traffic violation has sufficient authority to
stop the vehicle. Nuttall v. State, 87 S.W.3d 219, 222 (Tex. App.--Amarillo 2002, no pet.); 
Josey v. State, 981 S.W.2d 831, 837 (Tex. App.-Houston [14th Dist.] 1998, pet. ref'd). 
Admittedly, during that stop both the vehicle and its occupants are considered seized. 
Spright v. State, 76 S.W.3d 761, 766 (Tex. App.--Houston [1st Dist.] 2002, no pet.) (stating
that a routine traffic stop is a detention). And, while the seizure may last no longer than
necessary to effectuate the purpose of the initial stop, Davis v. State, 947 S.W.2d 240,
244-45 (Tex. Crim. App. 1997), the officer is nonetheless entitled to conduct a brief and
minimally intrusive investigation. For instance, he may require the detainee to identify
himself and produce a valid driver's license and proof of insurance. Spright v. State, 76
S.W.3d at 766. So too may the officer check for outstanding warrants, Davis v. State, 947
S.W.2d at 245 n.6, ask about the driver's destination and purpose for the trip, Nuttall v.
State, 87 S.W.3d at 222; Estrada v. State, 30 S.W.3d 599, 603 (Tex. App.--Austin 2000,
pet. ref'd.), and direct the driver to step out from the vehicle. Estrada v. State, 30 S.W.3d
at 603. (2) Indeed, when justified by safety and security concerns, the officer may also
require the detainee to move from one location to another during the investigatory stop. 
Josey v. State, 981 S.W.2d at 841. And, most importantly, once the purpose of the stop
has been effectuated and the officer's suspicions allayed, he may still ask the driver if he
possesses any illegal contraband and then solicit his voluntary consent to search the
vehicle. Spright v. State, 76 S.W.3d at 767-68. (3) If consent is withheld, then further
detention of either the individual or chattel becomes improper. 

 Here, the record depicts that the officer stopped appellant for speeding and asked
him to identify himself. While that was occurring, appellant was also asked about the
ownership of the van and the destination from whence he came. The same was asked of
the passenger. The two individuals gave conflicting responses. See Estrada v. State, 30
S.W.3d at 603 (considering the utterance of contradictory stories by occupants of a vehicle
as articulable facts which a court can consider in determining the existence of reasonable
suspicion). Furthermore, appellant informed the officer that though the owner of the van
(which vehicle was registered in Ohio) was a friend, he did not recall his name. (4) 
Thereafter, the officer asked if appellant was carrying drugs and obtained consent to
search the van. (5) While conducting that search, he saw a large quantity of detergent
scattered about, recalled that detergent is used as a masking agent to cover the odor of
drugs, see Estrada v. State, supra (recognizing the presence of odor-masking agents as
another articulable fact suggestive of criminality), smelled the odor of burnt marijuana, was
told by appellant that he had smoked marijuana earlier, and smelled the odor of raw
marijuana after opening a compartment of the vehicle. These circumstances, at the very
least, constitute articulable facts from which a reasonable officer can reasonably infer that
appellant may be transporting contraband. So, they justified further investigation. 

 Due to his concern about unduly de-constructing the vehicle to confirm or negate
his suspicions, the officer then decided to secure the use of a drug dog. See Davis v.
State, 947 S.W.2d at 245 (requiring that the investigative methods employed be the least
intrusive means reasonably available to verify or dispel the suspicion). Such a method of
investigation has been deemed to be minimally intrusive. Josey v. State, 981 S.W.2d at
841. Additionally, the idea of conducting a further search on an interstate also raised
some safety concerns for the officer. So, he asked appellant to drive the van into town,
and appellant agreed. To reiterate, safety and security reasons may justify moving a
suspect from one location to another.

 Eventually, the drug dog arrived and indicated that drugs were present in the
vehicle. Upon the dog so indicating, the officer's reasonable suspicion ripened into
probable cause not only to seize the vehicle but also arrest its driver. Glenn v. State, 967
S.W.2d 467, 472 (Tex. App.--Amarillo 1998, pet. dism'd). That approximately 75 minutes
lapsed between the time the officer first stopped appellant and the dog arrived did not per
se render the detention unreasonable. See id. (holding that a 90-minute delay was not per
se unreasonable); accord, Josey v. State, supra (holding that the detention was not
unreasonable even though the officers had to wait 90 minutes for the drug dog to arrive). 
The record illustrates that the animal had to be secured from a law enforcement agency
in a neighboring community. Furthermore, it was not immediately available. And, while
I-40 may be considered to be a thoroughfare over which drugs are often transported, the
record does not suggest that the officer 1) knew appellant would be traveling through the
area or 2) suspected him of carrying contraband prior to the time of the initial stop. See
United States v. Place, 462 U.S. 696, 710, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983) (wherein
the Supreme Court found the investigatory detention unreasonable because, among other
things, the investigators previously knew of the time the suspect was to appear and could
have arranged to have the dog present at that time).

 Finally, that the officer detained the van while informing appellant and his
passenger that they were free to leave is of no import. Officers have the authority to
temporarily detain for investigatory purposes either people or personalty. Davis v. State,
947 S.W.2d at 243-44. So, as long as reasonable suspicion exists indicating that the
chattel is linked to criminal activity, the officer is free to detain only the chattel. (6)

 In sum, and after reviewing the totality of the circumstances, we cannot say that the
trial court abused its discretion in concluding that the initial stop, subsequent search of the
vehicle, and ultimate arrest of appellant were lawful. Accordingly, we affirm its judgment.


 Brian Quinn

 Justice



Publish.
1. Rule 33.1 obligates one to inform the trial court of the grounds underlying a complaint "with
sufficient specificity to make the trial court aware of the complaint . . . ." Tex. R. App. P. 33.1(a)(1)(A). 
2. Given Estrada and Nuttall, appellant is mistaken when he posits that he was "under arrest" simply
because the officer asked him to exit the vehicle and would not allow him to leave. (Emphasis added). 
Again, those are things that can occur during a temporary investigative detention. Nor does the fact that an
officer may also pat down the suspect for weapons evince that the suspect has been arrested. That too is
something that may be done during an investigatory detention. Carmouche v. State, 10 S.W.3d 323, 329
(Tex. Crim. App. 2000). 
3. Given Spright, appellant also is mistaken when he argues that an officer can neither ask if the
detainee possesses contraband nor solicit consent to search his vehicle once the purposes of the initial
detention have been completed. 
4. It is not unreasonable to construe that response as suspicious. Indeed, common sense suggests
that a detainee would normally know the name of a "friend" who authorized the detainee to drive the vehicle
across the United States.
5. As previously discussed, appellant failed to preserve any complaint he had about the validity of the
consent.
6. We do admit, though, that when the personalty is a car, detention of the vehicle may effectively
restrain the liberty of the driver as well. Davis v. State, 947 S.W.2d 240, 243 (Tex. Crim. App. 1997).